UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

CAROL K. ROSICH,

          Debtor.

_____/

Case No. DG 13-06483
Hon. Scott W. Dales
Chapter 7

JEFF A. MOYER, Chapter 7 Trustee,

          Plaintiff,

Adversary Pro. No. 15-80208

v.

CHRISTOPHER ROSICH,

          Defendant.

_____/

OPINION AFTER TRIAL

PRESENT:    HONORABLE SCOTT W. DALES
                        Chief United States Bankruptcy Judge

I. INTRODUCTION

By the time of trial in this preference dispute, the only issue for decision was whether the $6,000.00 payment by chapter 7 debtor Carol K. Rosich to her son, Christopher Rosich, representing proceeds of a vehicle in which he held a perfected security interest, qualifies as a contemporaneous exchange for new value within the meaning of 11 U.S.C. § 547(c)(1). For the following reasons, the court finds that the release of Mr. Rosich's security interest to facilitate his mother's sale of the vehicle, and her payment of the sale

proceeds to him, was a contemporaneous exchange that shields the transfer from avoidance.

## II. JURISDICTION AND AUTHORITY

The United States District Court has jurisdiction over the chapter 7 bankruptcy case of Carol K. Rosich (the "Debtor") pursuant to 28 U.S.C. § 1334(a), and has referred its jurisdiction to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a). Proceedings to avoid and recover preferential transfers under 11 U.S.C. § 547 (such as the current adversary proceeding) are "core proceedings" within the meaning of 28 U.S.C. § 157(b)(2)(F) with respect to which Congress has authorized bankruptcy judges to enter final orders. Moreover, the parties to this proceeding consented to the entry of final judgment by a United States Bankruptcy Judge during the pretrial phase of this case, thereby eliminating any doubt about the court's authority to resolve this dispute.

## III. ANALYSIS

The court finds the following facts based on the two documents admitted at trial, the credible testimony of the Debtor and her son, Christopher Rosich, together with reasonable inferences drawn from the evidence.

Mr. Rosich made a loan to his mother which he secured by obtaining a security interest in a 2007 Pontiac Vibe titled in her name. He perfected his security interest in May 2011 by causing his name to appear as "first secured party" on the certificate of title.

His mother became discontented with the vehicle because it performed poorly on the snow-covered roads of rural Hesperia, Michigan, where she lived, and in August 2012, she decided it was time to sell it. She telephoned her son and instructed him to get the

certificate of title ready to deliver to a buyer because she was hoping to sell the Pontiac before winter.

In response to his mother's request, he removed the title from the fire-safe in the basement of his home in Holland, Michigan, and on August 12, 2012, dutifully signed it under the legend that reads "Release of First Lien." *See* Pl. Exh. 3. Because his mother lived several counties away, and because she did not yet have a buyer for the car, he retained possession of the certificate of title, awaiting her further instruction. That August, the Debtor made informal inquiries among three or four friends, putting out "feelers" to see if anyone were interested in purchasing the Pontiac. There was no interest in Hesperia or its environs in response to her somewhat casual sale efforts.

Later that month, the Debtor and her husband suspended their then-fruitless efforts to sell the Pontiac, and instead drove it to Atlanta where they planned to help their daughter refurbish a house she recently moved into. The certificate of title, however, remained in Holland, with the Debtor's son.

While in Atlanta, it occurred to the Debtor that a 2-wheel drive Pontiac Vibe might be more marketable in that warmer climate, so she posted the car on "craigslist" – an internet-based classified advertisement service. The craigslist posting generated several responses, including one from the ultimate buyer, Christopher King. The Debtor and her husband arranged to meet Mr. King's father at a parking lot so that he could look at the car. After Mr. King's father previewed the vehicle, Mr. King came to look at the vehicle on a second visit.

After this second visit, Mr. King said he wanted to buy the vehicle, and the Debtor then contacted Mr. Rosich to ask him to mail the certificate of title to her in Atlanta. After

it arrived in the mail at her daughter's house, the Debtor made arrangements with Mr. King to close the sale.  Mr. King paid the Debtor $6,000.00 in cash, and she tendered the certificate of title, showing that Mr. Rosich had released his lien.  On September 14, 2012, the Debtor deposited the $6,000.00 in her daughter's savings account for Mr. Rosich's benefit, thereby effecting the transfer that the Trustee now seeks to avoid as a preference.  *See* Pl. Exh. 5 ($6,000.00 transfer included as part of the $8,000.00 deposit that posted on September 14, 2012).

At the second pretrial conference, the parties agreed that the Debtor, while insolvent, transferred her interest in the $6,000.00 to Mr. Rosich, who was a creditor at the time, and an insider, on account of her antecedent debt to him.  The parties also agreed that this transfer enabled him to receive more than he would have received as an ordinary creditor in his mother's chapter 7 bankruptcy case (assuming the transfer had not been made).  In so doing, Mr. Rosich agreed that his release of lien predated the transfer from this mother to some extent.

In short, the Trustee established by stipulation his *prima facie* preference case under § 547(b)(1) in advance of trial.  As a result, the court must decide whether Mr. Rosich has met his burden of establishing his "contemporaneous exchange" defense under § 547(c)(1) to prevent the Trustee from avoiding the $6,000.00 transfer.  *See* 11 U.S.C. § 547(g) (burden of proof).

To establish a contemporaneous exchange defense, a preference defendant must prove by a preponderance of the evidence that the transfer was:

> (A)  intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B)   in fact a substantially contemporaneous exchange . . .

11 U.S.C. § 547(c)(1).  Section 547, moreover, defines "new value" to include the "release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law," such as the security interest that Mr. Rosich held and then released in this present case.  *Id.* § 547(a)(2).

The court finds that the Debtor and her son intended the payment of the $6,000.00 and the release of the security interest in the Pontiac to be a contemporaneous exchange: she needed a clean title to effect the sale of the vehicle to Mr. King which then generated the proceeds she used to pay back her son.  According to her credible testimony, she instructed him to get the title ready for a possible sale, and while in Atlanta (after Mr. King agreed to buy the car), she told her son to send the clean certificate of title – which he promptly did.

The court also finds that the exchange was in fact *substantially* contemporaneous, despite the fact that Mr. Rosich signed the certificate of title on August 12, 2012, several weeks before his mother paid him the $6,000.00 she received from the sale.  Indeed, by not delivering the certificate of title indicating his release of lien until his mother located a buyer, Mr. Rosich, as a practical matter, postponed the effectiveness of his signature until delivery to his mother.  According to his mother, she did not ask him to release the lien in advance of the sale, nor was she aware that he had signed his name under the lien release legend until the certificate of title arrived at her daughter's house in Atlanta.  Furthermore, as the Debtor testified in response to questioning from the Trustee's counsel, while the

certificate of title remained in Mr. Rosich's possession, she could not transfer the Pontiac to any purchaser.

Although the Trustee's case depends on a finding that Mr. Rosich released his lien on August 12, 2012 upon signing the certificate of title in the box so indicating, the court is not persuaded that he effectively released his lien upon execution, given the Debtor's credible testimony that the defendant retained possession of the certificate for several weeks while his mother attempted to sell the vehicle.

First, this court has previously recognized the "paramount importance of certificates of title to transfer motor vehicles" under the Michigan Vehicle Code. *See Remes v. Ford Motor Credit Corp. (In re Churchill)*, 80 B.R. 855, 860 (Bankr. W.D. Mich. 1987). As the Sixth Circuit observed:

> [A] potential creditor need look only to one place—the certificate of title—to discover prior security interests. If the debtor cannot or will not produce the title certificate the potential creditor is immediately on notice that he acts at his own risk.

*Uhle v. Parts and Trucks (In re Paige)*, 679 F.2d 601, 603 (6th Cir. 1982); *cf. Bruinsma v. Citizens Banking Corp. (In re Fleming)*, 226 B.R. 3 (Bankr. W.D. Mich. 1998). The Debtor's testimony established the importance of the certificate of title to this transaction.

Second, as a statutory matter, the Motor Vehicle Code requires more than a simple signature to release a security interest, at least where the secured party is in possession of the certificate of title. *See* M.C.L. § 257.238(4) ("[i]f there is no outstanding obligation . . . secured by a security interest in a vehicle . . . for which the certificate of title is in possession of a secured party, the secured party may . . . execute a termination statement . . . and mail or deliver the termination statement to the owner or another person as the

owner may direct"). Certainly, by withholding the signed certificate of title from his mother until after she procured a buyer, Mr. Rosich effectively preserved his security interest, much as if he had conditionally delivered the executed certificate to an escrow agent to await the occurrence of a closing. He certainly did not intend for his signature on the certificate to become effective immediately, having agreed only to get the certificate ready for eventual sale.

Although Mr. Rosich signed the certificate of title in the box for release of liens on August 12, 2012, he did not release his interest until he delivered the certificate of title several weeks later after his mother had agreed to sell the car to Mr. King. He and his mother agreed that he would release the lien upon the sale of the car, which is in fact what happened.

When he released his security interest, he gave "new value" to the Debtor as defined in § 547(a)(2) and received payment (via the deposit into the savings account for his benefit) a few days later. Indeed, the stipulation that established the Trustee's *prima facie* case also established that Mr. Rosich received the payment from his mother on account of her antecedent debt to him. The exchange, though not simultaneous, was substantially contemporaneous and intended as such. *See* 11 U.S.C. § 547(c)(1) (exchange must be intended to be contemporaneous and in fact substantially contemporaneous).

Today's decision is consistent with at least one of the policies behind the contemporaneous exchange defense, which prevents avoidance of a debtor's payment "if the payment is offset by the debtor's receipt of new value." *Stevenson v. Leisure Guide of America, Inc. (In re Shelton Harrison Chevrolet, Inc.)*, 202 F.3d 834, 837 (6th Cir. 2000) ("purpose of the contemporaneous exchange exception is to 'encourage creditors to

continue doing business with troubled debtors who may then be able to avoid bankruptcy altogether' . . . [and also recognize] that the debtor's payment does not adversely affect other creditors because the payment is offset by the debtor's receipt of new value"). This is just another iteration of the basic rule of ratable distribution that undergirds much of the Bankruptcy Code, including the power to avoid preferences.

In the usual case involving a fully-secured creditor's release of lien upon satisfaction of a debt, the trustee cannot prove a *prima facie* case, because such a transfer does not enable such a creditor to recover more in a chapter 7 proceeding than it would recover by simply asserting its lien rights. In the present case, however, the nature and the mechanics of this particular transaction prevented the exchange from being simultaneous (as it might have been with more sophisticated parties using an escrow agent, for example). Mr. King would not pay for the car without a clean certificate of title, which required Mr. Rosich to formally release his lien on the certificate of title itself. Mr. Rosich, however, was more than seven hundred miles away from the parties at the point of sale. Nevertheless, the contemporaneous exchange defense is flexible enough to protect certain substantially contemporaneous exchanges like the one that occurred here between family members in different parts of the country at the time of the transaction.

In his closing brief, the Trustee essentially concedes that the Debtor's testimony, if credited, seals the defense by establishing that Mr. Rosich did not deliver the certificate of title until after the Debtor arrived in Georgia and located a buyer for the Pontiac. *See* Plaintiff's Closing Argument (ECF No. 20) at p. 2 (Debtor's testimony "almost (too) perfectly proved Defendant's defense (assuming that delivery of the certificate of title to her was necessary for the release of Defendant's lien to be effective)"). As noted above,

having observed the demeanor of both witnesses, the court credits the Debtor's testimony and, after having reviewed applicable authority, also finds that Mr. Rosich's retention of the certificate postponed the release of his security interest until his mother, the owner of the vehicle, received it. *See* M.C.L. § 257.238(4).

The court's decision in *Fleming, supra,* upon which the Trustee's closing argument relies, does not require a different result. In *Fleming*, the court did not give controlling effect to the secured party's signature in the lien release section on the front of the title certificate, nor will it do so in this case, albeit for a different reason. The *Fleming* court found that, despite the secured party's delivery of the certificate to the owner of the vehicle, the reverse side of the certificate gave notice of the secured party's continuing interest. Conversely in the present case, notwithstanding the secured party's signature in the lien release box on the face of the certificate, his continued possession of the title certificate preserves the security interest. As in *Fleming*, the release of the lien requires both (i) an unequivocal indication of release on the certificate, and (ii) possession of the certificate by the owner of the vehicle, or her designee.

The court stands by its earlier statement in *Fleming* regarding the importance of the certificate of title, but also recognizes (as the Legislature implicitly did in M.C.L. § 257.238(4)) that subsequent purchasers cannot rely on the face of the title certificate, or be misled about the state of title, while the certificate remains in the secured party's possession.

Finally, the court does not regard Mr. Rosich's interrogatory response as inconsistent with his mother's testimony, although her recollection of the sequence of events was more certain than his. Both show that Mr. Rosich did not deliver the title to his

mother before she left for Georgia, and the court believes the Debtor's testimony that she received the certificate for the first time in Georgia, after she arranged the sale to Mr. King and shortly before she repaid her son.

### IV. CONCLUSION AND ORDER

Because Mr. Rosich established his defense under § 547(c)(1), the Trustee may not avoid or recover the $6,000.00 payment Mr. Rosich received from his mother.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Clerk shall (1) enter a separate judgment dismissing the complaint with prejudice, with each party to bear his own costs; and (2) serve a copy of this Opinion After Trial pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Andrew J. Gerdes, Esq., and Robert A. Stariha, Esq.

**IT IS SO ORDERED.**

**Dated October 14, 2016**



Scott W. Dales
United States Bankruptcy Judge